```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
```

GREGORY KELLY,

              Petitioner,

**DECISION AND ORDER
No. 07-CV-6539T**

   -vs-

ROBERT ERCOLE,

              Respondent.

```
_____
```

## I. Introduction

*Pro se* Petitioner Gregory Kelly ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered December 16, 2004, in New York State, Supreme Court, Erie County, convicting him, after a jury trial, of Burglary in the First Degree (N.Y. Penal Law ("Penal Law") § 140.30[2]) and Assault in the Third Degree (Penal Law § 120.00[1]).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II. Factual Background and Procedural History

## A. The Events of November 12, 2003

On November 12, 2003, at approximately 9:30 p.m., Gloria Middleton ("Middleton" or "the victim") was in her apartment when she heard the doorbell ring. Middleton met Petitioner in the

hallway as he was letting himself into the apartment building with a key. Trial Transcript [T.T.] 45-49. Petitioner initially told her that a friend of hers, who had parked his car around the corner, was upset and looking for her. T.T. 50-51. When that failed to lure her outside, Petitioner asked Middleton to use her phone. T.T. 52-53. After Middleton handed Petitioner her cell phone, he grabbed her from behind and pushed her into her apartment. He told her not to scream, that he had a knife and razor, and threatened to kill her. T.T. 56-57.

Petitioner dragged Middleton to her bedroom and threw her on the bed. Middleton saw a knife in Petitioner's left hand, and a struggle ensued. Petitioner slammed the apartment door shut as the victim, screaming for help, attempted to escape. The attack ended when Petitioner heard the victim's neighbor, Jalissa Henderson ("Henderson"), say she had called the police. T.T. 56-65. Shortly after the attack, Middleton was transported from her apartment to the hospital by ambulance where she received treatment for her injuries, including a cut on her finger, scratches on her face and neck area, and overall soreness. T.T. 67.

Petitioner was eventually apprehended by police behind the victim's apartment building. When they apprehended him, police searched Petitioner for a knife, but did not find one. T.T. 151-158.

**B. Indictment, Trial, and Sentencing**

An Erie County Grand Jury indicted Petitioner and charged him with two counts of burglary in the first degree, assault in the second degree, and criminal possession of a weapon in the third degree.

Petitioner proceeded to trial and testified in his own defense. He provided an account of the events of November 12, 2003 that was different from the victim's account, wherein he was the victim and Middleton was the primary aggressor. T.T. 243-252. He admitted, however, to chasing Middleton up the stairs, entering her apartment without her permission, grabbing her, pushing her, shaking and throwing her on the "hard wax floors," causing her to slide toward the bedroom. He also stated that he "shook her again [and] threw her down on the bed." T.T. 248-249, 310-312, 326.

Henderson, the victim's neighbor, testified at trial that Petitioner rang her doorbell between 9:00 and 9:30 p.m. on the night of the crime. As she was going to answer the door, Petitioner let himself into the building. Henderson believed that Petitioner was going into the apartment downstairs and so she returned to her apartment without conversing with him. T.T. 132-135. Approximately five minutes later, she heard Middleton screaming and crying for help. Henderson opened her door, looked into the hallway and saw the door of the victim's apartment open slightly and then slam shut. Henderson called the police, and then

yelled to the victim across the hallway that she had done so. After the police arrived, Henderson saw the victim's clothes were torn, her mouth was bloody, and her apartment was in disarray. T.T. 135-139.

Another neighbor, Gussie Trotter, who lived in the apartment below the victim, testified that she heard "thumping" upstairs and went to see what was happening. She saw the victim, who was crying and seemed frightened and shocked, standing in the hallway. The victim's clothes were disheveled and there was blood on her pants. T.T. 193-194.

Following the trial, Petitioner was found guilty of one count of burglary in the first degree and assault in the third degree. T.T. 461-462. On December 16, 2004, he was sentenced as a second violent felony offender to a determinate term of imprisonment of twelve years for the burglary conviction and a concurrent, determinate term of imprisonment of one year for the assault conviction. Sentencing Minutes [S.M.] 2-3, 8-9.

**C. Direct Appeal**

Petitioner appealed his judgment of conviction to the Appellate Division, Fourth Department, which was unanimously affirmed on November 17, 2006. People v. Kelly, 34 A.D.3d 1341 (4th Dept. 2006). Leave to appeal was denied by the New York Court of Appeals on January 12, 2007. People v. Kelly, 8 N.Y.3d 847 (2007).

**D. The Habeas Corpus Petition**

This habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) prosecutorial misconduct; (2) insufficiency of the evidence; (3) the verdict was against the weight of the evidence; and (4) harsh and excessive sentence. Petition [Pet.] ¶22A-D.

**III. General Principles Applicable to Habeas Review**

**A. The AEDPA Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the

law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The

presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B. Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

**IV. Petitioner's Claims**

**1. Prosecutorial Misconduct**

In ground one of the petition, Petitioner contends that he was denied his right to a fair trial as a result of prosecutorial misconduct. Specifically, he contends that the prosecutor's

characterization of his attack on the victim as "a woman's worst nightmare"[1] in his opening and closing statements was inflammatory, and implied that Petitioner was guilty of rape. Pet. ¶22A. Petitioner raised this claim on direct appeal, and it was rejected on the merits. The Appellate Division, Fourth Department, found that, "the comments of the prosecutor during his opening and closing statements were fair comment on the evidence and did not exceed the broad bounds of rhetorical comment permissible in such statements. In any event, the prosecutor's alleged misconduct was not so egregious as to deprive defendant of a fair trial." Kelly, 34 A.D.3d at 1342.

In order to obtain habeas relief based upon the misconduct of a prosecutor, "[i]t is not enough that the prosecutor's remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks and citation omitted). Rather, a constitutional violation will be found only when the prosecutor's remarks "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). Moreover, a prosecutor's remarks during summation are grounds for reversal "only when the remarks caused 'substantial prejudice' to the defendant." Id. (citations omitted). Whether the comments

---

[1] T.T. 22, 391.

caused substantial prejudice to the petitioner is to be assessed by considering "'the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements.'" Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir. 1990) (quoting United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981), cert. denied, 456 U.S. 989 (1982)).

Here, the prosecutor's comment in his opening and closing statements was not improper and did not amount to a constitutional infirmity. Rather, the comment constituted a fair characterization of the evidence. See Darden, 477 U.S. 182-3. That is, the prosecutor described a woman's "worst nightmare" as "[a] terrifying attack on an unsuspecting, unarmed woman" in her own home. T.T. 22, 391. This characterization of the attack was corroborated by the testimony of both Petitioner and the victim. The victim testified that Petitioner initially grabbed her from behind and pushed her into her own apartment. T.T. 56-57. Petitioner told the victim not to scream, that he had both a knife and a razor, and threatened to kill her. T.T. 57. Additionally, Middleton testified that Petitioner dragged her to her bedroom and threw her on the bed; that she saw a knife in Petitioner's left hand; and that a violent struggle ensued. Middleton testified that she attempted to escape her attacker, but that Petitioner slammed her apartment door. Notably, she also testified that the attack ended only when Petitioner heard Henderson say that she had called the

police.  T.T. 56-65.  Similarly, Petitioner testified that he chased Middleton up the stairs and entered her apartment without her permission.  He also testified that he grabbed her, pushed her, shook her, and threw her on the "hard wax floor" with enough force that she slid toward the bedroom.  In addition, Petitioner stated that he "shook her again [and] threw her down on the bed."  T.T. 248-249, 310-312, 326.

In any event, *assuming arguendo*, that the statements were prejudicial, any such prejudice was mitigated by the trial court's charge to the jury that arguments of counsel are not evidence and the resolution of every issue of fact must be based on the evidence alone.  T.T. 416-417.  Furthermore, absent the prosecutor's alleged misconduct, the outcome of Petitioner's trial would not have been different in light of the evidence against him establishing his guilt.  See, e.g., Modica, 663 F.2d at 1181, cert. denied, 456 U.S. 989 (1982) (holding that "if proof of guilt is strong, then the prejudicial effect of the [prosecutor's] comments tends to be deemed insubstantial"); see also Strouse v. Leonardo, 928 F.2d 548, 557 (2d Cir. 1991) ("Moreover, we believe that absent the alleged misconduct, given the overwhelming evidence of Strouse's guilt, he still would have been convicted."); accord, e.g., Norwood v. Artis, 487 F.Supp.2d 321, 332 (W.D.N.Y. 2007).

Based on the facts and circumstances of this case, the Court cannot find that Petitioner was denied due process because of the

-10-

prosecutor's comment in his opening and closing statements. The Appellate Division's decision, therefore, does not run afoul of clearly established federal law, and the claim is dismissed.

**2.  Verdict was Against the Weight of the Evidence**

In ground three of the petition, Petitioner argues that the verdict was against the weight of the evidence.  Pet. ¶22C. Petitioner raised this claim on direct appeal, and it was rejected on the merits.[2]  Although the claim has been properly exhausted in state court, it does not present an issue that cognizable by this Court on habeas review.

Challenges to the weight of the evidence supporting a conviction, unlike challenges to the sufficiency of the evidence, are not cognizable on federal habeas review.  See Maldonado v. Scully 86 F.3d 32, 35 (2d Cir. 1996).  A claim that a verdict was against the weight of the evidence derives from New York Criminal Procedure Law ("CPL") § 470.15(5), which permits an appellate court in New York to reserve or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence."  CPL § 470.15(5). Thus, the "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal

---

[2]  The Appellate Division, Fourth Department, found that, "the verdict is not against the weight of the evidence.  The jury was entitled to credit the testimony of the victim that she was attacked by the defendant in her apartment and to reject the theory of the defense that defendant was attacked in the hallway of an apartment building by the victim and another man."  Kelly, 34 A.D.3d at 1341-42.

sufficiency claim is based on federal due process principles. People v. Bleakley, 69 N.Y.2d 490, 495 (1987). Since a weight of the evidence claim is purely a matter of state law, it is not cognizable on habeas review. See U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Accordingly, habeas relief is unavailable to Petitioner and his claim that the verdict was against the weight of the evidence is dismissed.

**3. Harsh and Excessive Sentence**

In ground four of the petition, Petitioner asserts that his sentence was harsh and excessive. Pet. ¶22D. Petitioner raised this claim on direct appeal, and it was rejected on the merits. Kelly, 34 A.D.3d at 1342. Although the claim has been properly exhausted in state court, it does not present an issue that is cognizable by this Court on habeas review.

It is well-settled law that a habeas petitioner's challenge to the length of his or her prison term does not present a cognizable constitutional issue if the sentence falls within the statutory range. Townsend v. Burke, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's

denial of habeas corpus."); White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law.") (citing Underwood v. Kelly, 692 F.Supp 146 (E.D.N.Y. 1988), aff' mem., 875 F.2d 857 (2d Cir. 1989)); accord Ross v. Gavin, 101 F.3d 687 (2d Cir. 1996) (unpublished opinion). Because Petitioner's sentence falls within the permissible statutory range, he may not challenge the length of the sentence in the instant proceeding.

Here, Petitioner was sentenced as a second violent felony offender to a determinate term of imprisonment of twelve years for the burglary conviction (a class B felony), and a concurrent determinate term of one year for the assault conviction (a class A misdemeanor). S.M. 2-3, 8-9. This term falls within the range prescribed by New York law for a second violent felony offender convicted of a class B felony and a class A misdemeanor. See Penal Law §§ 70.04, 70.15.

Accordingly, habeas relief is not available to Petitioner, and the claim is dismissed.

## 4. Legal Insufficiency of the Evidence

Petitioner asserts that the evidence was legally insufficient to sustain his convictions for burglary in the first degree and assault in the third degree.[3] Pet. ¶22B. In particular, he argues

---

[3] Pursuant to Penal Law § 140.30[2], "a person is guilty of burglary in the first degree when he knowingly enters or remains unlawfully in a dwelling with intent to commit a crime therein and when, in effecting entry or while in the dwelling or in immediate flight therefrom, he or another

-13-

that the evidence was insufficient to prove the physical injury element of both of these offenses.[4]  See Pet'r brief on appeal, dated 04/10/06, Point II.  Petitioner raised this claim on direct appeal, and it was rejected on the merits.[5]

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'"  Jackson v. Virginia, 443 U.S. 307, 315 (1979) (quoting In re Winship, 397 U.S. 358, 364 (1970)).  Such an inquiry "does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt,'" rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a

---

participant in the crime . . . causes physical injury to any person who is not a participant in the crime ."

   Pursuant to Penal Law § 120.00[1], "a person is guilty of assault in the third degree when [w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person."

[4]   The Penal Code defines "physical injury" as "impairment of physical condition or substantial pain."  Penal Law § 10.00(9).

[5]   The Appellate Division, Fourth Department found as follows: "[w]e reject defendant's contention that the evidence is legally insufficient to support the conviction.  With respect to the physical injury element of both crimes of which defendant was convicted, the evidence is legally sufficient to establish that the victim suffered the requisite impairment of physical condition or substantial pain."  Kelly, 34 A.D.3d at 1341 (citations and internal quotations omitted).

reasonable doubt." Id. at 318-19 (citations omitted) (emphasis in original).

As the Supreme Court has instructed, this Court has reviewed the evidence in the light most favorable to the prosecution, and construed in its favor all permissible inferences arising from the evidence. There was ample evidence upon which a rational trier of fact could have found beyond a reasonable doubt that Petitioner's conduct established the essential elements of the crimes of burglary in the first degree and assault in the third degree. Specifically with regard to the physical injury element of both offenses, the evidence at trial established the following: that the victim was transported from her apartment to the hospital via ambulance to receive treatment for the injuries she sustained from the attack, including a cut on her finger which required two to three stitches, scratches on her face and neck area, and overall soreness to her body; and that her mouth was bloody and her blood was on her pants and on the kitchen floor of her apartment. T.T. 139, 170, 194, 204, 225-227. Additionally, Petitioner testified that he threw the victim on the "hard wax floors" with enough force for her to slide to the bedroom. T.T. 67, 311.

Accordingly, the Court cannot find that the state court's adjudication of this claim contravened or unreasonably applied Jackson v. Virginia. Habeas relief is not available to Petitioner, and his claim that the evidence was insufficient to support his

convictions for burglary in the first degree and assault in the third degree is dismissed.

**V. Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   June 9, 2010
         Rochester, New York